## FRANK J. RIPPLE *vs.* MARY H. KUEHNE ET AL.

*Bill to Vacate Assignment For Fraud—Insufficient Evidence—Laches.*

A bill to vacate an assignment of city stock to their mother by her children, the plaintiffs, alleged that the plaintiffs were induced to make the assignment by reason of fraudulent representations made to them by the assignee. The bill was filed eight years after the assignment and nearly a year after the death of the assignee. *Held*, that the evidence in the case fails to show that the assignment was made in consequence of any false statement by the assignee; that the plaintiffs were fully informed as to their rights in the stock when they made the assignment and there was an adequate consideration therefor, and that the acquiescence and laches of the plaintiffs constitute an additional bar to the relief asked for.

Appeal from the Circuit Court of Baltimore City (DEN-NIS J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Charles W. Heuisler* and *E. Allan Sauerwein, Jr.,* for the appellant.

*C. Dodd McFarland* ann *Emil Budnitz,* for the appellees.

BRISCOE, J., delivered the opinion of the Court.

The object of this proceeding is to declare illegal, null and void the following assignment of Baltimore City water stock, No. 5593, valued at $5,000, and standing in the name of Mary Elizabeth Hax, for life.

The assignment is in the following language:

"Baltimore, March 31, 1894.

"For value received, we, the undersigned do hereby assign, transfer and set over unto Mary E. Hax all our right, title and interest in and to $5,000 worth of Baltimore City water stock No. 5593, standing in the name of Mary Elizabeth Hax for life."

This assignment was duly signed by the plaintiffs below, the appellees here, and their signatures were tested by the defendant below, the appellant here, and on the 9th of April, 1895, upon application, the Orphans' Court of Baltimore City ordered the stock to be transferred to the assignee.

In this case it will be necessary for us to state and set out the material facts as disclosed by the record, as upon these will rest the decision of the case.

The bill charges that Christian Hax, of Baltimore City, departed this life in the year 1885, leaving a large and valuable estate which he disposed of by last will and testament.

By the will he devised all his property and estate, except a small portion thereof, to his wife, Mary C. Hax, for life, with certain powers, and after the death of his wife he directed that the undisposed of portion thereof should be divided into three

equal parts. One of these parts (the one here in controversy) be devised to Mary Elizabeth Hax, the widow of a deceased son, to be held and enjoyed by her during her widowhood, and upon her second marriage or death, whichever event should first happen, then it should go to his grandchildren, viz: Mary H., Mary Christina, Louis and Christian V. Hax.

It is further alleged that Mary C. Hax, the widow, died in the year 1889, and that the water stock together with other property, was transferred to the devisee for life, to be held under the testator's will, and that subsequently on the 3rd day of April, 1894, she intermarried with the defendant, Frank J. Ripple, whereupon her interest in the estate ceased and became the property of her children, the appellees in this case.

It is also alleged that Christian V. Hax, one of the brothers, departed this life in November, 1891, prior to the marriage of his mother, intestate and unmarried, leaving two sisters, a brother (the appellees), and his mother as sole distributees and his only heirs at law.

The bill further avers that prior to and upon the contemplated marriage, the mother claimed and represented to be the sole heir distributee of her deceased son, and claimed she was entitled to all of his estate, and then proposed to take in her right as sole heir and distributee the $5,000 of Baltimore City stock mentioned in the assignment and to convey the residue of the estate devised to her for life, and to the appellees, under Christian Hax will.

The bill then charges that they were induced by these false and fraudulent statements and representations as contained in the bill to execute and deliver to their mother the assignment of the 31st of March, 1894, and by reason of the fraud and misrepresentation by which the assignment was acquired, it is illegal and void.

The prayer of the bill is, first, that the assignment of the water stock may be declared null and void; second, that the property in which the proceeds of the stock was invested may be held and declared liable for the value of their interest in the stock, third, that the property may be decreed to be sold and

they be reimbursed out of the proceeds of the sale for their interest in the stock, and fourth, a prayer for general relief.

The defendant, Ripple, answered the bill both as executor and in his individual right. He admits the assignment of the water stock prior to the marriage and that it was transferred to his wife, and subsequently sold; and that he and his wife now deceased, purchased and took title to the Augusta avenue property, as tenants by the entireties. He avers and charges that the claim that the appellees were induced by the fraud and misrepresentation of their mother to execute and deliver the assignment of March 31st, 1894, is false and scandalous, and a willful and deliberate falsehood.

On the 9th of March, 1904, the testimony was closed by the examiner, and on the following day, the 10th of March, the bill of complaint was dismissed by order of the attorney for the plaintiffs as to Frank J. Ripple, executor of Mary E. Ripple.

There was a large amount of testimony taken in the case, and after a careful consideration of all of it, we are of the opinion that the plaintiffs are not entitled to the relief asked in their bill and that the decree of the Circuit Court of Baltimore City, passed on the 28th of June, 1904, was erroneous and will have to be reversed and the bill dismissed.

There is no evidence in the record to justify the conclusion that the assignment in question was executed or procured through any fraud on the part of the mother of the appellees. It is not charged by the bill nor is it disclosed by the proof, that the appellant, Frank J. Ripple, either participated in or was in any way connected with the transfer of the stock in question, except as a witness to the signatures of the parties who made the assignment.

It is, however, contended on the part of the appellees, that the consideration for the transfer of the water stock was not adequate and was procured by a parent occupying a confidential relation to her children with the power of parental authority and control over them. In this view we cannot concur in the light of the evidence contained in the record.

By the assignment in question each of the children gave to their mother about the sum of $1,500, and upon her marriage they received the sum of $9,000 each.

The marriage of the mother, then, caused an estate of about $30,000 to be transferred to them at once, whereas it would otherwise have been postponed until her death. They lived upon friendly terms and not a word of objection or protest was made until her death, about seven years after the assignment. Mr. Burchman, a witness in the case testified, that Mr. Milton W. Audoun an attorney at law, prepared the assignment and did so after a consultation with all the members of the family; "that after the execution of the paper, Louis Hax, one of the sons, who was in the habit of calling at the office very frequently told him, that his mother was to be married, and that he and his sisters had executed a transfer of $5,000 of Baltimore City water stock to her because under the terms of his grandfather's will, she was only entitled to the estate so long as she remained a widow, but that he and the other children had been satisfied to transfer this stock to her because by reason of her marriage they would get possession at once of their share of their grandfather's estate and that he and his sisters were glad that they had done so, as they thought their mother was entitled to it. He further testified on cross-examination, that Mr. Audoun stated to him that he had consulted all the children and that they had agreed to transfer this stock to their mother.

There is also testimony tending to show that all of the parties to the assignment, must have fully understood what was done by them with reference to the assignment.

But apart from this, we think, the appellees under the facts and peculiar circumstances of this case are barred by acquiescence and lapse of time.

The bill was not filed until more than eight years after the alleged fraud was committed and almost a year after the death of the party charged with the fraud, and the attorney who transacted the business. This Court has repeatedly held there must be "conscience, good faith and reasonable diligence to

.call into action the powers of a Court of equity." . In *Hammond* v. *Hopkins*, 143 U. S. 224, it it said, in all cases where actual fraud is not made out, but the imputation rests upon conjecture, where the seal of death has closed the lips of those whose character is involved, and lapse of time has impaired the recollection of transactions and obscured their details, the welfare of society demands the rigid enforcement of the rule of diligence. And those who have slept upon their rights must be remitted to the repose from which they should not have been aroused.

In *McCoy* v. *Poor*, 56 Md. 197, it is said: "There are cases where parties are in such position of interest that they ought to assert their rights, if they do not acquiesce, and from great lapse of time are presumed to have acquiesced." And in *Preston* v. *Horwitz*, 85 Md. 164, this Court held that the principal foundation of the doctrine of laches are acquiescence and lapse of time but other circumstances will be taken into consideration. "Thus it is a material circumstance that the claim is not made until after the death of those who could have explained the transaction." *Chase* v. *Winans*, 59 Md. 475; *Mackall* v. *Casilear*, 137 U. S. 567; *Norris* v. *Haggin*, 136 U. S. 425. For the reasons given, the decree of the Circuit Court of Baltimore City will be reversed and the bill dismissed with costs.

*Decree reversed, bill dismissed with costs.*

(Decided March 22nd, 1905.)